. Daniel T. BERESFORD and Debra L. Beresford, Appellants–Plaintiffs,

v.

Richard STARKEY and Janet Starkey, Appellees–Defendants.

No. 32A01–8911–CV–450.

Court of Appeals of Indiana, First District.

Nov. 20, 1990.

Richard L. Norris, John M. Choplin, II, Norris, Choplin & Johnson, Indianapolis, for appellants-plaintiffs.

William H. Kelley, James L. Whitlatch, Bunger, Robertson, Kelley & Steger, Bloomington, for appellees-defendants.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Daniel T. and Debra L. Beresford appeal the judgment against them on their action against Richard and Janet Starkey on counts of nuisance and negligence. We affirm.

## FACTS

During the weekend of September 20–21, 1986, Daniel and Debra Beresford attended a party hosted by Richard and Janet Starkey at a cottage on Lake Maxinkuckee. Late on the evening of the 20th, the Starkeys and several of the guests decided to go swimming and all jumped or dived into the water from the end of a dock which stretched over 100 feet out into the lake. The moon was shining and outdoor lights did not reach the water. The water was

murky, as it had been all day. After diving and jumping into the water, the Starkeys and their guests stayed low in the water to stay warm, giving the impression they were treading in deep water, although the depth of the water was only three feet. Although he had been swimming and water skiing in the lake that day, Daniel Beresford had never been swimming off this dock. However, seeing the others in the water, he also dived in. His dive rendered him a quadriplegic.

The Beresfords sued the Starkeys for damages, asserting they were negligent in failing to exercise reasonable care to warn Daniel Beresford that it was dangerous, hazardous, and unsafe to dive from the dock into the lake, in concealing the existence of a hidden dangerous condition, and in diving into the lake and crouching down. The Beresfords also requested damages on the basis the dock was a nuisance. The trial court rendered a judgment on the evidence against the Beresfords on their nuisance count and the jury returned a verdict against the Beresfords on their negligence count.

## ISSUES

The Beresfords raise five issues which we restate as:

1. Whether the trial court erred in giving instruction No. 6,[1] No. 9, and No. 11, regarding the Beresfords' burden of proof and the Starkeys' duties, and in refusing the Beresfords' tendered instruction No. 5A regarding the Starkeys' duties.

2. Whether the trial court erred in refusing to give the Beresfords' tendered instruction No. 4, regarding the Starkeys' liability, in light of their knowledge and acts or omissions, if a dangerous condition was found by the jury to have existed.

3. Whether the trial court erred in giving final instruction No. 8 which defined incurrence of the risk of injury.

4. Whether the trial court erred in ruling inadmissible testimony by Debra Beres-

ford regarding Janet Starkey's statement that the Starkeys were at fault in causing Daniel Beresford's injury.

5. Whether the trial court properly granted the Starkeys' motion for judgment on the evidence on the nuisance action and properly refused the Beresfords' tendered final instructions No. 7A and No. 8 regarding the burden of proving nuisance and the definition of nuisance.

## DISCUSSION AND DECISION

*Issue One*

▮▮▮ The Beresfords contend the trial court erred in giving final instructions No. 6, 9, and 11, and in refusing their tendered instruction No. 5A. The giving of jury instructions is within the discretion of the trial court. We limit our review to determining whether given instructions were supported by the evidence and were correct statements of the law. No single instruction need contain all the applicable law. We review instructions to see that they are in harmony with each other. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1274. In addition, when we review a trial court's failure to give a requested instruction, we will find error only if the tendered instruction correctly stated the law, it was supported by the evidence, and its substance was not covered by instructions given. *Marathon Petroleum Company v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 783. Even if a trial court has erred in refusing an instruction, the error is reversible error only if the complaining party's substantial rights have been adversely affected. *Board of County Commissioners of County of St. Joseph v. Arick* (1985), Ind.App., 477 N.E.2d 112, 114, *trans. denied.*

Final instruction No. 6 provided:
"The plaintiffs have the burden of proving the following propositions. First, that the defendants were willful and wanton. Second, that the plaintiff, Daniel T. Beresford was injured. Third, that

---

1. The trial court's final instructions were not numbered. The Beresfords assigned numbers 1 through 25 to them in the order in which copies were provided to the parties and read to the jury.

the willful and wanton act of the defendants was the proximate cause of the injury to the plaintiff. If you find from a consideration of all the evidence that the propositions have been proved, then your verdict should be for the plaintiffs. However, if you find from a consideration of all the evidence of all the evidence [sic] that any of these propositions have not been proved or if you find that the plaintiff himself was more than 50 percent at fault, your verdict should be for the defendant."

Record at 932–33. At trial, the Beresfords objected that the instruction: (1) incorrectly stated their burden of proof which they thought was to prove the Starkeys violated a duty of ordinary care, (2) incorrectly covered intentional conduct which was not covered under the comparative fault act, and (3) was incorrect in failing to mention all of the elements supporting the Beresfords' legal theories while at the same time being phrased as mandatory.

Final instruction No. 9 read: "In this case Daniel T. Beresford was a licensee. An occupant of property is under no duty to a licensee until his presence is known or should have reasonably been known. Then the occupant has only the duty of not wilfully [sic] or intentionally causing him injury." Record at 933. The Beresfords assert that, although the instruction was modeled after Indiana Pattern Jury Instruction 25.07, it omitted some optional, but important, qualifying language: "However, when the occupant has actual or constructive notice that a licensee is in a place of danger, he is under a duty to use ordinary care to avoid injuring the licensee." In addition, they contend the use of "only" in No. 9 was misleading in precluding consideration by the jury of other duties which the Beresfords assert the Starkeys had.

Final instruction No. 11 read: "A licensee takes the land as he finds it. The only

affirmative duty the defendants owed to the plaintiffs was to refrain from willfully or wantonly injuring them or acting in a way which increase [sic] the plaintiff's peril, [sic] mere negligence is not enough." Record at 934. The Beresfords argue the instruction was incorrect because: (1) it was in conflict with the Restatement (Second) of Torts § 342;[2] (2) it used the word "only" while omitting the duty of a possessor to warn a licensee of concealed dangerous conditions; and (3) it stated that a negligence standard did not apply to the duty of a possessor to refrain from acting in a way which would increase a licensee's peril.

The Beresfords contend the court, instead of giving final instruction No. 11, should have given their tendered instruction No. 5A: "You may find Richard Starkey and/or Janet Starkey were at fault if Richard Starkey and/or Janet Starkey acted in a way which would increase Dan Beresford's peril." Record at 271.

Both parties agree Daniel Beresford was a licensee because he was a social guest of the Starkeys at the time of his accident. See Martin v. Shea (1984), Ind., 463 N.E.2d 1092, 1093. Both parties also agree the Starkeys owed a duty to Beresford: (1) not to willfully or wantonly injure him, see Gaboury v. Ireland Road Grace Brethren, Inc. (1983), Ind., 446 N.E.2d 1310, 1314 and Wright v. International Harvester Co. (1988), Ind.App., 528 N.E.2d 837, 839, trans. denied; (2) to refrain from acting in a way which would increase Beresford's peril, See Gaboury, 446 N.E.2d at 1314 and Burrell v. Meads (1989), Ind.App., 540 N.E.2d 115, 116; and (3) to use reasonable care to warn an unaware licensee of concealed dangerous conditions which are known to the possessor. Wright, 528 N.E.2d at 839.

However, the Beresfords contend the duty to refrain from acting in a way which

**2.** "Dangerous Conditions Known to Possessor A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land, if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such

licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved."

would increase a licensee's peril is subject to an ordinary care standard. Our supreme court quite clearly stated that a landowner owes a licensee only "the duty of refraining from willfully or wantonly injuring him or acting in a way which would increase the licensee's peril. A showing of ordinary negligence ... would not be sufficient for relief ..." *Gaboury,* 446 N.E.2d at 1314-15 (citation omitted). We also have held that an occupant's or owner's duty to refrain from acting in a way which would increase a licensee's peril is not subject to an ordinary negligence standard, but is subject to a willful and wanton standard of care. *See Burrell,* 540 N.E.2d at 116; *Kidd v. Davis,* 485 N.E.2d 156, 158.

■ The Beresfords, however, cite *Harper v. Kampschaefer* (1990), Ind.App., 549 N.E.2d 1067, 1071, *trans. denied,* which dealt with a trespasser, to support their argument that a possessor has a duty to give a licensee reasonable warning once the possessor has done any positive act to increase a licensee's hazard. Discussing hidden dangers, the court in *Gaboury* stated that a "licensor must give reasonable notice or warning to licensees if he does any positive act creating a new concealed danger." *Gaboury,* 446 N.E.2d at 1315 quoting but vacating *Gaboury v. Ireland Road Grace Brethren, Inc.* (1982), Ind.App., 441 N.E.2d 227, 231. Although a landowner who strung cable across a path after discovering motorcycle riders owed such trespassers a duty of reasonable care not to increase their peril, *Harper,* 549 N.E.2d at 1067, a church which had stretched a cable across its parking lot did not do a positive act creating a dangerous condition. *Gaboury,* 446 N.E.2d at 1315. Therefore, the church had no duty to warn a licensee of a concealed danger. *Id.*

The Beresfords contend the Starkeys committed a positive wrongful act by diving into the lake and squatting down, giving an impression the water was deeper than it actually was. We find such conduct was not positive and wrongful in the manner that the landowner's conduct in *Harper* was. As a matter of law, we find such conduct by the Starkeys did not constitute a positive wrongful act. Therefore, the ordinary care standard of the Beresford's tendered instruction No. 5A was not supported by the evidence, and the trial court did not err in refusing the instruction. Similarly, the qualifying language of Indiana Pattern Jury Instruction 25.07 appropriately was not used by the trial court when it gave final instruction No. 9.

Based on the above discussion, we find the trial court's instructions No. 6, 9, and 11 were correct statements of the law and were supported by the evidence. Although final instruction No. 6 did not instruct the jury on the Starkeys' duty to use reasonable care to warn Daniel Beresford of a concealed dangerous condition, final instruction No. 4 did so. In addition, instruction No. 6 did not cover "intentional" conduct, as alleged by the Beresfords. Instead, the instruction covered willful and wanton conduct, which is included within the definition of fault under Indiana's comparative fault law. *See* IND.CODE § 34-4-33-2(a). The use of the word "only" in final instructions No. 9 and 11 was not error since final instruction No. 4 and the other instructions given by the trial court covered the Starkeys' other duties.

*Issue Two*

■ The Beresfords argue the trial court erred in refusing to give their tendered instruction No. 4[3] regarding the Starkeys' liability, in light of their knowledge and

---

3. The Beresfords' tendered instruction No. 4 read:

"You may find Rich Starkey and/or Janet Starkey liable for the Beresfords' injury and damages resulting from the condition of the area where Dan Beresford was injured if:
   a. Rich Starkey and/or Janet Starkey knew or had reason to know of the condition, should have realized that it involved an unreasonable risk of harm to Dan Beresford and

should have expected that Dan Beresford would not discover or realize the danger and
   b. Rich Starkey and/or Janet Starkey failed to exercise reasonable care to make the condition safe, or to warn Dan Beresford of the condition and the risk involved, and
   c. Dan Beresford did not know or have reason to know of the condition and the risk involved."
Record at 248.

acts or omissions, if a dangerous condition was found by the jury to have existed. Their instruction was based on the Restatement (Second) of Torts § 342 (1965), which was first quoted with approval in Indiana in *Wozniczka v. McKean* (1969), 144 Ind. App. 471, 486–87, 247 N.E.2d 215, 223, *trans. denied.* Additionally, the Beresfords contend the trial court erred in giving final instruction No. 10 [4] because it was an incorrect statement of the law and was not supported by the evidence.

The Starkeys acknowledge that a possessor of land has a duty to use reasonable care to warn a licensee of a concealed, dangerous condition where the possessor should expect that a licensee will not discover or realize the danger or that a licensee does not know about the condition and the risk involved. However, they contend the evidence did not support the giving of the Beresfords' tendered instruction No. 4.

The Beresfords argue the condition of the lake was a concealed dangerous condition, especially the condition of the lake at the point of the accident, which took place off the dock end, over 100 feet from the nearest shoreline. Thus, they contend the facts supported the giving of tendered instruction No. 4 about the Starkeys' duty to use reasonable care to warn Daniel Beresford.

We have already held that, as a matter of law, an adult is deemed to be familiar with the dangers of bodies of water. *Barbre v. Indianapolis Water Company* (1980), Ind.App., 400 N.E.2d 1142, 1146, *trans. denied.* "Inherent in the conditions of bodies of water are the dangers of varying depths, sharp drop offs and shallow shorelines." *Id.* Thus, contrary to the Beresfords' assertion, the dangerous condition of the lake and dock area was obvious and was not concealed. Therefore, Daniel Beresford is deemed to have had reason to know of the dangerous condition of the lake and of the risk involved in diving into it. Thus, final instruction No. 10 was a correct statement of the law and was supported by the evidence, and the trial court did not err in giving it. Furthermore, the Starkeys should not have expected that Daniel Beresford would not discover or realize the danger. Therefore, tendered instruction No. 4 was not supported by the evidence and the trial court did not err in refusing it.

*Issue Three*

The Beresfords contend the trial court erred in giving final instruction No. 8.[5] because it incorrectly stated the law by infusing an objective test into the subjective concept of incurred risk. The incurred risk defense "demands a subjective analysis focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk." *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, 486. An objective standard is used for the defense of contributory negligence. *Hundt v. La Crosse Grain Co.* (1983), Ind., 446 N.E.2d 327, 329; *Goodhart v. Board of Commissioners of County of Parke* (1989), Ind. App., 533 N.E.2d 605, 611, *trans. denied.*

Thus, the Beresfords are correct in contending that final instruction No. 8 regarding incurred risk should have instructed the jury only about a subjective analysis. The last sentence of the instruction, "And whether a person of ordinary prudence un-

---

4. Final instruction No. 10 read:
   "The relationship of host and guests gives no right to protection from obvious dangers. The plaintiff, Daniel Beresford, is deemed to be familiar with dangers inherent in the conditions of bodies of water including varying depths, sharp dropoffs, and shallow shorelines. The plaintiff is presumed to understand and appreciate such dangers."
   Record at 933–34.

5. Final instruction No. 8 read:
   "When a person knows of a danger, understands the risk involved and voluntarily exposes himself to such danger, that person is said to have incurred the risk of the injury. In determining whether the plaintiffs [sic] incurred the risk, you may consider his experience and understanding [sic] whether he had reasonable opportunity to observe the potential dangers involved in his actions.[sic] And whether a person of ordinary prudence under the circumstances would have done what he did."
   Record at 934–35.

der the circumstances would have done what he did", Record at 934–35, was incorrect.

■ In considering the balance of the instruction, we think it important to distinguish between the use of objective evidence to show what a person should have known and the use of objective evidence to show what a person actually knew. The former is impermissible in proving the incurred risk defense. However, "a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that he did not know or understand the risk." Prosser, *Law of Torts* § 68, at 487, (5th ed. 1984). As put by the authors in the Restatement (Second) of Torts § 496D comment d (1965), "In cases of assumption of risk, ... the plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no adult will be believed if he says that he did not know or understand them."

■ Our supreme court noted when quoting an earlier edition of the Prosser treatise, "While the determinative question remains the plaintiff's subjective knowledge and state of venturousness, ... that plaintiff's actual knowledge may be proven by circumstantial evidence notwithstanding the absence of a plaintiff's admission of such knowledge." *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 555. In addition, in two product strict liability cases, in which the affirmative defense of incurred risk is a permissible defense just as it is in negligence actions, our supreme court held that the obviousness of a danger or product defect is an appropriate consideration in the evaluation of the actual state of mind of the product user. *FMC Corp. v. Brown* (1990), Ind., 551 N.E.2d 444, 446; *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, 441. In addition to a plaintiff's

testimony, a plaintiff's age, experience, knowledge, and understanding, the obviousness of a danger or product defect, and the risk presented by the danger or defect are all relevant factors for a jury to consider in evaluating a plaintiff's actual knowledge. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, 430–31, 261 N.E.2d 305, 312. In light of the above references, we hold that, in a negligence action in which the incurred risk defense is asserted, objective evidence is admissible to show what a person actually knew of a danger and understood of the risk involved.[6]

Had the second sentence of final instruction No. 8 read: "In determining the plaintiff's actual knowledge, you may consider his experience and understanding", it would have been correct. As it read when given to the jury, it included both objective and subjective standards. Despite the fact the sentence was inartfully drawn, confused the objective standard used in a contributory negligence instruction and the subjective standard used in an incurred risk instruction and, therefore, was technically incorrect, we find no reversible error under the narrow facts of this case. As a matter of law Daniel Beresford is deemed to have been familiar with the dangers and risks involved with bodies of water, *Barbre*, 400 N.E.2d at 1146. Therefore, he is deemed, as a matter of law, subjectively to have known of the risk he was incurring in diving into the lake.

■ The Beresfords also argue there was no evidence Daniel Beresford had actual knowledge of, or voluntarily exposed himself to, dangers of the low water level; therefore, the giving of instruction No. 8 was not supported by the evidence. In reviewing a claim that evidence was insufficient to support the giving of an instruction we look only to that evidence most favorable to the appellee. If there is any evidence to support the instruction, it was

6. Some of the other cases which are in accord are: *Campbell v. Nordco Products*, 629 F.2d 1258 (7th Cir.1980); *Green v. Parisi*, 478 F.2d 313 (3rd Cir.1973); *Christner v. E.W. Bliss Co.*, 524 F.Supp. 1122 (M.D.Pa.1981); *Bertles v. Guest*, 477 F.Supp. 179 (E.D.Pa.1979); *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill.3d 925,

1 Ill.Dec. 644, 356 N.E.2d 926; *Uloth v. City Tank Corp.* (1978), 376 Mass. 874, 384 N.E.2d 1188; *Lonon v. Pep Boys, Manny, Moe & Jack* (1988), 371 Pa.Super. 291, 538 A.2d 22; *Staymates v. ITT Holub Industries* (1987), 364 Pa.Super. 37, 527 A.2d 140.

124

properly given. *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122, *trans. denied.* The record reflects that Daniel Beresford had been water skiing in the lake the day of his accident, although he had not been swimming previously off the dock. The record also reflects that Daniel Beresford was not urged or forced to enter the lake, but voluntarily dived into the lake. We hold the evidence supported the giving of an instruction on incurred risk. Nevertheless, as we discussed above, final instruction No. 8 was technically incorrect. However, the giving of final instruction No. 8 was not reversible error since, as a matter of law, he is deemed to have known of the dangers and risks involved with bodies of water. *Barbre,* 400 N.E.2d at 1146.

*Issue Four*

■ The Beresfords allege the trial court committed reversible error in excluding testimony by Debra Beresford regarding a statement made to her by Janet Starkey to the effect that the accident was "our fault, we shouldn't have led you out, and I dove in." Record at 838.

■ An out-of-court statement offered in court for the truth of the matter therein is hearsay. *Blue v. Brooks* (1973), 261 Ind. 338, 343, 303 N.E.2d 269, 273; *Kline v. Business Press, Inc.* (1987), Ind.App., 516 N.E.2d 88, 91, *trans denied.* However, an admission, defined as an out-of-court statement made by a party and introduced in court by a party opponent, *Jethroe v. State* (1974), 262 Ind. 505, 511, 319 N.E.2d 133, 138, is admissible into evidence as an exception to the hearsay rule. *Jones v. State* (1987), Ind., 510 N.E.2d 1352, 1353. We note that "[a]lthough a party admission is usually against interest when made, such an admission is distinct from, and may come in without satisfying the requirements for, declarations against interest." *State Farm Mutual Automobile Insurance Company v. Shuman* (1977), 175 Ind. App. 186, 199, n. 4, 370 N.E.2d 941, 952, n. 4, *trans. denied* (citation omitted). "The admissibility of admissions rests on the fact of inconsistency with the present posi-

tion of a party who made them." (citations omitted) *Indiana State Highway Commission v. Vanderbur* (1982), Ind.App., 432 N.E.2d 418, 422.

The Beresfords rely on *McCormick on Evidence,* § 264, at 632–33 (2d ed. 1984), for the prevailing view that admissions in the form of opinions, including admissions of fault, are competent and admissible evidence. We agree with the Beresfords that Janet Starkey's statement was an admission of fault and should have been admitted through Debra Beresford's testimony as an exception to the hearsay rule.

■ Where a trial court has excluded evidence we will uphold a trial court's ruling if any valid objection existed. *Moritz v. State* (1984), Ind., 465 N.E.2d 748, 755, *trans. denied.* The Starkeys objected to Debra Beresford's testimony as irrelevant. Relevance is defined as "the logical tendency of evidence to prove a material fact." *Lake County Counsel v. Arredondo* (1977), 266 Ind. 318, 321, 363 N.E.2d 218, 220. We agree with the Beresfords that Janet Starkey's admission of fault was some evidence of negligence. Therefore, Debra Beresford's testimony regarding Janet Starkey's admission was not irrelevant.

The Starkeys' full objection to the Beresfords' questioning of Debra Beresford was: "[I]t invades [the] province of the jury, it's improper conclusion or opinion, it's improper hearsay, it does not constitute an admission against interest and it's irrelevant." Record at 832–33. The trial court sustained the Starkeys' objection on the grounds: "[E]ven if they are admissions, are too highly pur, [sic] prejudicial, they're made too late after the uh, uh, accident and they could be misused by the jury, included, those reasons including all the objections of Mr. Kelley." Record at 842. The court reasoned the testimony could be misused by the jury because information regarding insurance coverage had been withheld from the jury, and the court mentioned the fact Janet Starkey had made the admission after the night of the accident.

"[T]he old rule that a witness may not give an opinion on an ultimate fact ques-

tion" has been abrogated in Indiana. *Shelby v. State* (1981), Ind.App., 428 N.E.2d 1241, 1243. Therefore, the trial court erred in including as a basis for its ruling the Starkeys' objection that questioning of Debra Beresford invaded the province of the jury.

As the Starkeys acknowledge in their brief, prejudicial effect, remoteness, and misuse by the jury are all relevancy objections. All were raised by the trial court *sua sponte* as justification for its ruling. Lack of remoteness is not a foundational element for the admission of a party opponent. *See Vanderbur*, 432 N.E.2d at 422. A trial court is given wide discretion in weighing the probative value of evidence in proving a material fact against the possible prejudice of its admission. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 854. Nevertheless, we hold the trial court here abused its discretion in ruling testimony regarding the admission by a party opinion was too highly prejudicial to be admitted. If misuse by the jury was feared, an appropriate warning instruction would have sufficed.

Even though evidence has been erroneously excluded, we will reverse only if the error was prejudicial because it related to a material matter or substantially affected the parties' rights. *Manns v. State Department of Highways* (1989), Ind., 541 N.E.2d 929, 936. An exclusion is harmless if the excluded evidence was otherwise presented to the jury. *Id.*

Although Janet Starkey's admission of fault can be considered as an admission of ordinary negligence, it cannot be deemed to be an admission of willful and wanton conduct against Daniel Beresford or an admission of willful and wanton increase of Daniel Beresford's peril. Furthermore, an admission of negligence is not an admission of liability. *Progressive Construction and Engineering Co., Inc. v. Indiana and Michigan Electric Co., Inc.* (1989), Ind.App., 533 N.E.2d 1279, 1283–84. In addition, "[a] party's admission is not conclusive evidence, and may be contradicted, explained or otherwise disputed." 13 *Miller, Indiana Practice* § 801.421, at 129

(1984), citing *Dipert v. State* (1972), 259 Ind. 260, 263, 286 N.E.2d 405, 407. Finally, admissions by one party are not admissible as evidence against a co-party in a civil action. *Vanderbur*, 432 N.E.2d at 422.

Facts regarding the Starkeys' actions before and at the time of the accident were entered into evidence during testimony. Therefore, although Debra Beresford's testimony about Janet Starkey's admission was admissible and related her opinion as to the fault issue, the exclusion of the admission did not substantially affect the parties' rights. Thus, the court did not commit reversible error in excluding the admission.

*Issue Five*

The Beresfords contend the trial court erred in sustaining the Starkeys' motion for judgment on the evidence with respect to the Beresfords' nuisance action and in refusing to give the Beresfords' requested instruction No. 7A, regarding the Beresfords' burden of proving nuisance, and instruction No. 8, defining nuisance.

Our standard for reviewing a trial court's ruling on a motion for judgment on the evidence is the same as that which governed the trial court. *Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109, 115, *trans. denied.* That is, we:

"must consider only the evidence and reasonable inferences most favorable to the non-moving party. Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper."

*Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224, (emphasis omitted) (quoting *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 206–07).

IND.CODE § 34–1–52–1 defines a nuisance as "[w]hatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, ..." A nuisance is classified as public if it affects an entire community or neighborhood or as private if its effect is peculiar to an individual or a limited number of individuals. *Yeager & Sullivan, Inc. v. O'Neill* (1975), 163 Ind.App. 466, 471, 324 N.E.2d 846, 850, *trans. denied.* Although the Beresfords' complaint does not so specify, it appears to charge the Starkeys' dock and swimming area was a private nuisance, since no effect to the general public is alleged.

The Beresfords contend their evidence shows that the dock and swimming area were in a dangerous and unsafe condition, injurious to human life, and that they, therefore, constituted a nuisance.

A review of Indiana cases addressing the question of private nuisances which were found to be dangerous instrumentalities or conditions, *Zeppenfeld v. Franklin Motor Service Co.* (1922), 77 Ind.App. 687, 134 N.E. 487 (gasoline tanks in residential area constructed in violation of fire regulations); *Scott Construction Co. v. Cobb* (1928), 86 Ind.App. 699, 159 N.E. 763 (blasting stone in a quarry); *Deller v. Hofferberth* (1891), 127 Ind. 414, 26 N.E. 889 (steam engine out of repair and unsafe), indicates conditions unlike a dock or swimming area.

The court in *Hays v. Hartfield L–P Gas* (1974), 159 Ind.App. 297, 301, 306 N.E.2d 373, 376, discussing a liquid propane bulk tank located on adjoining property stated that, "[a] condition created by one landowner that causes another reasonably to be in constant fear for the safety of his life or property is such a serious interference so as to constitute a nuisance." The court in *Town of Kirklin v. Everman* (1940), 217 Ind. 683, 688, 28 N.E.2d 73, 75, on rehearing 217 Ind. 683, 29 N.E.2d 206, stated:
"Not every dangerous agency is a nuisance, and we believe it can be said generally that an instrumentality maintained upon private premises may only be said to be a nuisance upon the ground that it is calculated to produce personal injuries when it is of such character, and so maintained, that it is reasonably and naturally calculated to injure the general public or strangers who may come upon the premises."

The court stated that a pit with gasoline fumes which was covered with a protective covering of boards was not dangerous to the general public or to a stranger coming upon the premises. Only when the boards were removed and one descended into the pit and there ignited matches was the pit dangerous."

As the Starkeys argue, the dock and the swimming area were not in themselves indecent, offensive, or injurious to health and did not obstruct the free use of another's property. In addition, there was no evidence the Beresfords were constantly in fear because of the dock or swimming area and no evidence the dock and swimming area were calculated to injure a stranger who merely entered the Starkeys' property. Only the use of the dock and swimming area by Daniel Beresford made it injurious to his health.

Although the Beresfords rely on Michigan cases and Michigan courts have entertained actions with facts nearly identical to these, as a matter of law, Indiana courts have never upheld a nuisance action with facts at all similar to these. The trial court, therefore, did not err in granting the Starkeys' judgment on the evidence and in refusing the Beresfords' instructions No. 7A and 8 on the issue of nuisance.

We affirm.

BAKER and ROBERTSON, JJ., concur.